IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNION HOME MORTGAGE CORP., | ) |
| | ) |
| Plaintiff, | ) Case No.1:23-cv-00400 |
| | ) |
| v. | ) |
| | ) |
| JOHN K. HARVEY, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR**
**INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Union Home Mortgage Corp. ("Union Home"), by counsel, for its Complaint for Injunctive Relief and Damages against Defendant John K. Harvey ("Harvey"), hereby alleges and states as follows:

**PARTIES**

1. Union Home is in the business of providing homeowners and prospective home buyers with mortgage and refinance loan products.

2. Harvey was previously employed by Union Home as a Loan Officer at its branch located in Lake Elmo, MN.

**JURISDICTION AND VENUE**

3. Paragraphs 1-2 are incorporated herein by reference.

4. This is an action seeking injunctive relief and damages against Harvey based on violations of his Employee Agreement with Union Home, as well as statutory violations and violations of the common law.

1

5. Union Home is an Ohio corporation with its principal place of business in Strongsville, Cuyahoga County, Ohio.

6. Harvey is a resident, and citizen, of Minnesota and resides in or near Lake Elmo, Minnesota.

7. Harvey currently owes Union Home well in excess of $75,000. Further, "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977).

8. Jurisdiction is proper in federal court pursuant to 28 U.S.C. § 1332, as this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

9. Harvey's agreement with Union Home (the "Employee Agreement") states that "any claim arising out of or related in any way to the Employee's employment or termination of that employment, including claims arising under this Agreement, shall be filed in a state or federal court in Ohio. Employee and the Company [Union Home] consent to personal jurisdiction in such a court and waive any right to seek a transfer of venue or to assert *forum non-conveniens*." Employee Agreement, ¶ 16. A true and accurate copy of the July 5, 2022 Employee Agreement is attached hereto as Exhibit A, hereinafter "Employee Agreement".

10. The Court has jurisdiction to hear this case and venue is proper in this Court because the parties consented to personal jurisdiction in this Court, Union Home's principal place of business is in Cuyahoga County, and the harm suffered by Union Home, as described herein, was suffered in Cuyahoga County.

11. The choice of law provision in the Employee Agreement identifies Ohio law as governing "all aspects of this Agreement." *Id.*

## FACTUAL BACKGROUND

### Harvey's Employment with and Contractual Obligations to Union Home

12. Paragraphs 1-11 are incorporated herein by reference.

13. On July 5, 2022, Harvey and Union Home agreed to and entered into the new Employee Agreement, pursuant to which Harvey would serve as a Loan Officer for Union Home at its Lake Elmo, Minnesota branch and pursuant to which Harvey would receive a retention bonus of $217,000 as an unvested advance that Harvey would earn in full by remaining employed by Union Home for three (3) years.

14. As a Loan Officer, Harvey acquired confidential, proprietary, and trade secret information regarding, among other things, Union Home's customers, prospective customers, and referral sources.

15. As a Loan Officer, Harvey was given access to and was in a position of trust with regard to the goodwill between Union Home and its customers, prospective customers, and referral sources.

16. Union Home invests significant time, effort, and resources into recruiting, training, and retaining its Loan Officers.

17. In the Employee Agreement, Harvey agreed as follows:

> Employee agrees they will not engage in Competitive Activity on behalf of a Competitive Entity in the Restricted Area during the Restricted Period. For purposes of this Agreement, the "Restricted Period" shall be the period between the date this Agreement is executed and **October 15, 2025**; the "Restricted Area" shall mean any state in which Employee is legally able to originate or broker mortgages and has done so on behalf of the Company in the thirty-six (36) months preceding the termination of Employee's employment with the Company; a "Competitive Entity" shall be any entity that competes with the Company in the home mortgage

3

banking or brokering business; and "Competitive Activity" shall be acting in the same or similar capacity in which Employee worked for the Company and shall include, but not be limited to performing the functions of a loan officer, such as by, directly or indirectly, originating or brokering mortgages for real estate located in the Restricted Area.

(Ex. A, ¶6).

18. Harvey agreed not to directly or indirectly disclose, divulge, reveal, report, publish, or transfer any of Union Home's Confidential Information. (*Id.* at ¶9).

19. Confidential Information is defined, in part, as "confidential or proprietary information or trade secrets of [Union Home], including but not limited to, written or electronic information: (i) disclosed to [Harvey] or known by [Harvey] as a result of his . . . employment, (ii) which is not generally known, and (iii) which relates to or concerns [Union Home]'s business, . . . customers, prospective customers, referral sources, pipelines, customer relationship management databases…" among other things. (*Id.*).

20. Harvey agreed, through the Employee Agreement, that, until October 15, 2026 (one year after the end of the Restricted Period) he would not "directly or indirectly, solicit or divert (or attempt to solicit or divert) or accept competitive business from any customer or identified prospective customer of [Union Home]: (i) with whom [Harvey] had contact; or (ii) about whom [Harvey] obtained or had access to Confidential Information in conjunction with [his] employment in the thirty-six (36) months preceding the termination of [Harvey's] employment with [Union Home]." (*Id.* at ¶ 7).

21. Harvey also agreed that any violation of these covenants would cause Union Home irreparable harm and, as a result, specifically "consent[ed] to the issuance of a restraining order and/or an injunction." (*Id.* at ¶15).

22. Harvey also agreed to "devote [his] best efforts to such employment [with Union Home] as long as it shall continue." (*Id.* at ¶1).

4

23. Further, Harvey agreed that he "shall be liable for any attorneys' fees expended by [Union Home] to enforce [the Employee Agreement]." (*Id*. at ¶15).

24. Harvey was a trusted employee of Union Home, who was given access to the goodwill Union Home has with its customers, prospective customers, and referral sources, as well as Union Home's confidential and trade secret information, including confidential information about Union Home's customers, prospective customers, and referral sources.

25. The Employee Agreement is a binding and enforceable contract between Union Home and Harvey.

26. Union Home performed its material obligations under the Employee Agreement.

27. Harvey owed and continues to owe legal and contractual obligations to Union Home pursuant to the Employee Agreement.

**Harvey Resigns from Union Home and Immediately Begins Competing**

28. On or about January 19, 2023, Harvey resigned from his position as a Loan Officer with Union Home.

29. Upon his resignation, Harvey immediately began working for American Pacific Mortgage Corporation in the Restricted Area. Harvey continues to service clients in and around Lake Elmo, Minnesota.

30. American Pacific Mortgage Corporation is a direct competitor of Union Home that competes with Union Home in and around Lake Elmo, Minnesota among other places.

31. Harvey's NMLS listing states he is currently employed by American Pacific Mortgage Corporation.

32. As a result, Harvey's employment with American Pacific Mortgage Corporation is in the same or similar capacity as his prior work for Union Home.

33. Harvey is now competing with Union Home in the same market in which he worked for Union Home (Lake Elmo, Minnesota) and clearly within one hundred miles of the Union Home branch at which he worked.

34. Realtors are a common referral source, and Harvey's communications, on behalf of American Pacific Mortgage Corporation, with realtors with whom he interacted on behalf of Union Home, is an example of Harvey trading on Union Home's goodwill on behalf of American Pacific Mortgage Corporation.

### Harvey Fails to Repay His Bonus

35. Harvey was paid a conditional signing bonus of $217,000 in exchange for signing the Employee Agreement.

36. The Employee Agreement also provided that, if Harvey's "employment with the Company ends for any reason prior to the first anniversary of the Effective Date [July 5, 2022], Employee agrees to repay the entire bonus to the Company." Exhibit A, ¶ 4(a).

37. The Employee Agreement requires repayment of the bonus within 15 days after the termination of employment. *Id.*, ¶ 4(b).

38. However, Harvey has failed to complete the repayment of his bonus as required under the Employee Agreement.

39. Furthermore, Harvey agreed that if he failed to timely repay his bonus he would "pay the Company all such costs and fees associated with those [collection] efforts, including the Company's legal fees." *Id.*

### COUNT I:  BREACH OF COVENANT NOT TO COMPETE

40. Paragraphs 1-39 are incorporated herein by reference.

41. The covenant not to compete within the Employee Agreement, like the Employee Agreement itself, is subject to Ohio law.

42. The covenant not to compete is a reasonable restriction on Harvey, and is no more restrictive than is reasonably necessary to protect Union Home's business interests and is therefore enforceable.

43. Harvey's employment with American Pacific Mortgage Corporation in the same or similar capacity and in the same market is a breach of the covenant not to compete in his Employee Agreement with Union Home.

44. Harvey's breach of the covenant not to compete in the Employee Agreement has caused and will continue to cause immediate and irreparable injury, loss, and damage to Union Home in an amount that cannot be precisely calculated.

## COUNT II:  BREACH OF CONTRACT (FAILURE TO REPAY BONUS)

45. Paragraphs 1-44 are incorporated herein by reference.

46. The Employee Agreement is a valid and enforceable contract.

47. Union Home has performed all of its obligations under the Employee Agreement.

48. Union Home paid Harvey a bonus of $217,000 under the Employee Agreement, which Harvey agreed to return in full, within 15 days, if his employment with Union Home ended before July 5, 2025.

49. Harvey's employment with Union Home ended on January 19, 2023, and he was obligated to return the full amount of his bonus by February 3, 2023.

50. Harvey has failed to repay his bonus.

51. Union Home is entitled to repayment of the bonus that was paid as well as its costs of collection (including attorney fees), pursuant to the Employee Agreement.

## PRAYER FOR MONETARY AND INJUNCTIVE RELIEF

A.      Paragraphs 1-51 are incorporated herein by reference.

B.      Union Home is entitled to the receipt of the funds owed by Harvey to repay the bonus paid to him by Union Home, plus the cost of collecting the bonus, including reasonable attorney fees, as well as pre- and post-judgment interest.

C.      As a direct and proximate cause of Harvey's conduct, Union Home has suffered, and will continue to suffer, irreparable harm in the loss of business opportunities, customers, and the misappropriation of its goodwill, trade secrets, and confidential and proprietary information in an amount that cannot be fully, completely, and adequately remedied at law.

D.      In the Employee Agreement, Harvey expressly acknowledged and agreed that a breach or violation of the covenants set forth in the Employee Agreement would cause irreparable harm and consented to the issuance of a restraining order and injunctive relief.

E.      Harvey has and continues to willfully violate the Employee Agreement.

F.      Without injunctive relief, Harvey will continue to violate his covenants and the law, thereby causing Union Home additional irreparable harm. In contrast, no harm will accrue to Harvey by entry of injunctive relief, as Harvey never had the right to violate his legal and contractual obligations to Union Home.

G.      Injunctive relief is appropriate because protection and maintenance of Union Home's goodwill, trade secrets, and confidential and proprietary information is a vital and legitimate business concern. In the absence of injunctive relief, it is unlikely that Union Home will have the ability to calculate precisely the extent of business losses associated with Harvey's violation of the Employee Agreement.

H. The public interest will not be harmed if an injunction is granted, and Union Home does not anticipate that granting an injunction will pose any administrative inconvenience for the Court.

I. Given Harvey's willful and malicious violations of his obligations under the Employee Agreement, any bond required to be posted by Union Home should be *de minimis*.

WHEREFORE, Union Home respectfully requests that the Court grant the following relief:

1. Grant injunctive relief against Harvey requiring specific performance of the terms and conditions of the Employee Agreement and the common law;

2. Enter judgment in favor of Union Home and against Harvey for damages Union Home has incurred and continues to incur as a result of Harvey's breaches of the Employee Agreement and the law, including actual damages, compensatory damages, punitive damages, costs, interest, and reasonable attorneys' fees; and

3. Grant all other relief just and proper in the circumstances.

Respectfully submitted,

*/s/ Jason T. Clagg*
Jason T. Clagg (0097303)
(jason.clagg@btlaw.com)
**BARNES & THORNBURG LLP**
888 S. Harrison Street, Suite 600
Fort Wayne, IN 46802
Phone: (260) 423-9440
Fax: (260) 424-8316

and

Paul N. Garinger (0079897)
(paul.garinger@btlaw.com)
**BARNES & THORNBURG LLP**
41 South High Street, Suite 3300
Columbus, OH 43215
Phone: (614) 628-0096
Fax: (614) 628-1433

ATTORNEYS FOR PLAINTIFF